# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES DRANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV901 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND RECOMMENDATION</u>
## <u>OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff, James Drane, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The Court has received the certified administrative record and the parties have filed cross-motions for judgment (Docket Entries 11, 17). For the reasons that follow, the Court should remand the case for further administrative proceedings.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution for Michael J. Astrue as Defendant in this suit, by operation of Federal Rule of Civil Procedure 25(d).

## PROCEDURAL HISTORY

Plaintiff protectively applied for DIB and SSI on January 19, 2007, alleging a disability onset date of December 20, 2006. (Tr. 178-89.) After denials initially (Tr. 78, 79, 82-87) and on reconsideration (Tr. 80, 81, 90-98), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 104). Plaintiff, his attorney, a medical expert ("ME"), and a vocational expert ("VE") all attended the hearing. (Tr. 32-77.) The ALJ thereafter ruled Plaintiff not disabled. (Tr. 7-24.) The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-5.)

In making this disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through June 30, 2010.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since December 20, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.071 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: history of drug abuse and alcohol; bipolar disorder; history of ankle fractures and degenerative disc disease - spine (20 CFR 404.1520(c) and 416.920(c)).
>
> . . .
>
> 4. [Plaintiff]'s impairments, including the substance use disorders, meet sections 12.04 and 12.09 of 20 CFR

Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

. . .

5.  If [Plaintiff] stopped the substance use, the remaining limitations would cause more than a minimal impact on [Plaintiff]'s ability to perform basic work activities; therefore, [Plaintiff] would continue to have a severe impairment or combination of impairments.

. . .

6.  If [Plaintiff] stopped the substance use, [Plaintiff] would not have an impairment or combination of impairments that meets or equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

. . .

7.  If [Plaintiff] stopped the substance use, [Plaintiff] would have the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except his decreased ability to concentrate on and attend to work tasks would limit him to the extent that he can perform only unskilled simple, routine, repetitive tasks in a non-production setting.

(Tr. 12-19.)

In light of the foregoing finding regarding residual functional capacity ("RFC") and the testimony of the VE, the ALJ determined that, if Plaintiff "stopped the substance use, he would be unable to perform his past relevant work" ("PRW") as an optician technician, plumbing and boiling worker, gas station attendant and HVAC technician.  (Tr. 22.)  The ALJ further described Plaintiff as "37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date," with "at least a high school

education" and the ability to "communicate in English."  (Id.)
Relying on the VE's testimony and Rule 201.28 of the Medical-
Vocational Guidelines as a framework for decision, the ALJ found
that, if Plaintiff "stopped the substance use," a significant
number of jobs existed in the national economy that he could
perform.  (Tr. 22-23.)  Accordingly, the ALJ ruled that Plaintiff
"ha[d] not been disabled . . . at any time from the alleged onset
date through the date of th[e] decision."  (Tr. 23.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of . . . review of [such a] decision . . . is extremely limited."
Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts
are not to try the case de novo."  Oppenheim v. Finch, 495 F.2d
396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold
the factual findings of the ALJ [underlying a denial of benefits]
if they are supported by substantial evidence and were reached
through application of the correct legal standard."  Hines, 453
F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion.'"
Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting
Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that question, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [a claimant's] medical condition." Hall, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2

---

[2] The Act "comprises two disability benefits programs. The [DIB] Program . . . provides benefits to disabled persons who have contributed to the program while employed. The [SSI] Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

(4th Cir. 1999).[3]  A finding adverse to a claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled.  Id. at

_____

[3] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[5]

## Assignments of Error

Plaintiff argues that the ALJ erred at steps three, four and five of the SEP.  (Docket Entry 12 at 17-29.)  Specifically, Plaintiff first contends that the ALJ impermissibly failed to address whether Plaintiff's degenerative disc disease met a disability listing.  (Id. at 17-18.)  He further alleges that the ALJ erroneously accounted (or failed to account) for the opinions of treating physicians Dr. Deborah Payne and Dr. Patrick Godwin. (Id. at 18-22.)  Next, Plaintiff asserts that the ALJ wrongly posed

---

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

a hypothetical question to the VE that omitted some of Plaintiff's limitations. (Id. at 22-24.) Finally, Plaintiff maintains that the ALJ improperly evaluated credibility issues. (Id. at 24-29.) Defendant disputes each of these contentions and urges that substantial evidence supports the ALJ's determination that Plaintiff did not qualify as disabled. (Docket Entry 18 at 3-20.)

## 1.   Listing 1.04, Disorders of the Spine

Plaintiff first alleges that the ALJ erred by failing to expressly consider whether Plaintiff's degenerative disc disease met or equaled Listing 1.04, Disorders of the Spine, 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 1.04. (Docket Entry 12 at 17-18.)  In that regard, Plaintiff insists that diagnostic studies showing "end stage" disc degeneration at L5-S1 and disc material abutting or contacting the S1 nerve roots (Tr. 848, 1182, 1186), along with frequent reports or findings of "radiating pain" (Tr. 782, 825, 842, 849, 943) and Plaintiff's testimony regarding the severity of his back pain (Tr. 51-52, 55), provided a sufficient basis for the ALJ to address Listing 1.04. (Docket Entry 12 at 17.)  Plaintiff has shown no reversible error on point.

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." Huntington v. Apfel, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (emphasis added) (citing Cook v. Heckler, 783 F.2d 1168, 1172 (4th

Cir. 1986)).  In other words, an ALJ's duty to discuss "[l]isting criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." Ketcher v. Apfel, 68 F. Supp. 2d 629, 645 (D. Md. 1999) (emphasis added); see also Russell v. Chater, No. 94-2371, 60 F.3d 824 (table), 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished) (holding that Cook "does not establish an inflexible rule requiring an exhaustive point-by-point discussion [of listings] in all cases").  Here, although Plaintiff's degenerative disc disease constituted a severe impairment (at step two of the SEP), the record does not contain sufficient evidence of Listing 1.04's criteria to have triggered the ALJ's duty to discuss that Listing (at step three of the SEP).[6]

Sufficient evidence does show that Plaintiff suffers from a spinal disorder (degenerative disc disease) that results in "compromise of a nerve root (including the cauda equina) or the spinal cord," 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 1.04. (See Tr. 782, 801, 825, 842, 848.)  However, to meet Listing 1.04,

---

[6] Plaintiff's brief lacks any developed argument that his degenerative disc disease actually met or equaled the criteria of Listing 1.04. (See Docket Entry 12 at 17-18.)  Notably, Plaintiff neither specified which of the three subsections of Listing 1.04 his spine impairment allegedly met or equaled, nor did he point the Court to specific findings in the record which satisfy each of the required criteria in Listing 1.04. (See id.)  "[The] notabl[e] absen[ce] from [Plaintiff's] brief[] . . . [of] any meaningful contention that the ALJ's step three determination is unsupported by substantial evidence," Russell, 1995 WL 417576, at *3, also renders "the need for a full explanation [by the ALJ] questionable at best because [it means that Plaintiff] does not take issue with the substance of the ALJ's step-three analysis," id. (emphasis in original).

10

Plaintiff also must establish the existence of the signs and symptoms set out in at least one of these subsections:

A.  Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

    or

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

    or

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 1.04. He did not.

First, Plaintiff failed to provide sufficient evidence that his back impairment satisfies subsection A. Most notably, the record indicates that Plaintiff's lower extremity motor function, sensation and reflexes remained intact (Tr. 368, 372, 382, 386, 460, 535, 597, 600, 782, 787, 797, 817, 847, 850, 898, 933, 941,

1038, 1064, 1156, 1093)[7] and straight leg raising tests produced negative results (Tr. 460, 549, 570, 578, 642, 782, 801, 850, 853). Second, a review of the record reveals no evidence that Plaintiff suffered from spinal arachnoiditis, as required by subsection B. Finally, regarding subsection C, although magnetic resonance imaging ("MRI") showed mild, bilateral lateral recess stenosis and moderate, bilateral foraminal stenosis at L5-S1 (Tr. 848, 1045), insufficient evidence exists of the requisite "weakness" (as discussed in connection with subsection A) or an "inability to ambulate effectively, as defined in 1.00B2b," 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 1.04C.[8]

---

[7] Plaintiff's neurologists did note decreased sensation in Plaintiff's left foot on two occasions (Tr. 850, 960) and increased sensitivity ("hyperalgesia") to pin scratch in his left leg in a pattern consistent with the S1 nerve distribution on two occasions (Tr. 943, 960). However, these isolated occurrences of sensory deficits did not require the ALJ to discuss Listing 1.04, when considered against the repeated findings, noted above, of normal strength, sensation and reflexes in Plaintiff's lower extremities.

[8] "Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 1.00B2b(1). In this case, Plaintiff experienced difficulty walking and temporarily used a cane while recuperating from his bilateral ankle fractures (see, e.g., Tr. 580-627, 765-71, 929-36, 1016-34), but the record demonstrates that Plaintiff suffered from no difficulty ambulating on account of his spinal impairment (see Tr. 292, 317, 368, 382, 460, 546, 549, 569, 587, 640, 642, 650, 794, 817, 825, 850, 905, 939, 943, 946, 1038, 1039, 1065, 1071, 1080, 1093, 1109, 1156, 1159).

To conclude, because Plaintiff produced insufficient evidence that his spinal impairment met or equaled Listing 1.04, the ALJ did not reversibly err by failing to discuss it.[9]

## 2. Treating Physicians' Opinions

Next, Plaintiff contends that the ALJ improperly evaluated the opinions of treating physicians Dr. Deborah Payne and Dr. Patrick Godwin. (Docket Entry 12 at 18-22.) On this point, Plaintiff first maintains that the ALJ wrongly rejected a Medical Source Statement regarding Plaintiff's mental impairments issued by Dr. Payne, a treating psychiatrist, on June 17, 2009. (Id. at 18-20; Tr. 978-82.) According to Plaintiff, the ALJ must cite "persuasive contradictory evidence" to reject a treating physician's opinion and the ALJ's analysis regarding Dr. Payne fell "woefully short" of that standard. (Docket Entry 12 at 19.) Plaintiff also contends that the ALJ reversibly erred because his decision "did not mention" Dr. Godwin's Medical Source Statement regarding Plaintiff's physical impairments issued on August 19, 2009. (Id.

_____

[9] Plaintiff's argument that the ALJ's duty to develop the record required him to consult a physician regarding whether Plaintiff's back impairment met or equaled Listing 1.04 (Docket Entry 12 at 18) similarly fails. "The ALJ had before him sufficient facts to determine the central issue of [whether Plaintiff met a listing]." Scarberry v. Chater, No. 94-2000, 52 F.3d 322 (table), 1995 WL 238558, at *4 n.13 (4th Cir. Apr. 25, 1995) (unpublished). As detailed above, the record before the ALJ contained extensive orthopedic and neurology treatment notes and diagnostic studies regarding Plaintiff's back impairment. Moreover, the Court should decline to find any reversible error on this point because "[Plaintiff's] attorney does not identify what [any] missing evidence would have shown; rather, []he merely speculates that having [further] evidence might have produced a different result." Id. (internal quotation marks omitted).

at 21-22; see also Tr. 1055-61.)  Plaintiff's arguments on both of these matters have merit.[10]

The treating physician rule generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, on the ground that treating sources "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2).[11] The rule also recognizes, however, that not all treating sources or treating source opinions deserve such deference.

First, the nature and extent of each treatment relationship may temper the weight afforded.  20 C.F.R. §§ 404.1527(d)(2)(ii) & 416.927(d)(2)(ii).  Further, a treating source's opinion controls

_____

[10] Plaintiff argues that the ALJ also improperly rejected the opinions of physician's assistant Aaron Munching.  (Docket Entry 12 at 20-21.)  According to Plaintiff, the ALJ mistakenly referred to Mr. Munching as "Dr. Munching" and thus erroneously viewed him as a treating physician.  (Id.)  Plaintiff claims that the ALJ then failed to properly evaluate Mr. Munching's opinions under the treating physician rule.  (Id.)  This argument falls short.  The ALJ's mistaken reference to Mr. Munching as "Dr." does not alter the fact that Mr. Munching fails to qualify as a "treating physician" under the applicable regulations, 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2), and, therefore, no violation of the "treating physician rule" could arise with respect to Mr. Munching.

[11] Effective March 26, 2012, a regulatory change recodified the treating physician rule as 20 C.F.R. § 404.1527(c)(2), but did not impact the substantive language of the rule.  See 77 Fed. Reg. 10651-10657 (Feb. 23, 2012).  Given that all material events in this action precede this non-substantive regulatory change, the undersigned will use the pre-March 26, 2012 citations.

14

only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2)-(4) & 416.927(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; accord Mastro, 270 F.3d at 178. Finally, opinions regarding issues reserved to the Commissioner, regardless of source, do not receive controlling weight. See 20 C.F.R. §§ 404.1527(e) & 416.927(e).[12]

Dr. Payne treated Plaintiff's mental impairments for two and a half years, diagnosed him with bipolar disorder and generalized anxiety disorder, and rated his Global Assessment of Functioning ("GAF") at 58. (Tr. 978.)[13] Additionally, she opined that he had moderate to marked loss of ability to carry out very short, simple instructions, as well as and marked to extreme loss of ability to complete a normal work day or work week without interruptions from

---

[12] Issues reserved to the Commissioner include "(1) whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings; (2) what an individual's RFC is; (3) whether an individual's RFC prevents him or her from doing past relevant work; (4) how the vocational factors of age, education, and work experience apply; and (5) whether an individual is 'disabled' under the Social Security Act." SSR 96-5p, Medical Source Ops. on Issues Reserved to Comm'r, 1996 WL 374183, at *2.

[13] The GAF uses a 100-point scale to show an individual's functional level. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text revision 2000). A GAF of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id. at 34. A new edition of the leading treatise discontinued the GAF. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

psychologically based symptoms. (Tr. 980-81.) According to Dr. Payne, Plaintiff had marked loss of ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to maintain regular attendance and punctuality; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact with the general public; and to get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes. (Id.) She also concluded that he suffered marked restriction of his activities of daily living and social functioning; frequent deficiencies of concentration, persistence or pace; and repeated to continual episodes of decompensation. (Tr. 981.) Finally, Dr. Payne predicted that Plaintiff's mental impairments would cause work absences more than three times per month. (Tr. 979.)[14]

The ALJ described Dr. Payne's opinions as follows:

A Medical Source Statement dated June 17, 2009 completed by Deborah Payne, M.D. indicated [Plaintiff] was diagnosed with bipolar disorder II; generalized anxiety disorder and a Global Assessment of Functioning of 58. Dr. Payne indicated [Plaintiff] experienced occasional sleep disturbance; mood disturbance; substance dependence, in remission; occasional panic attacks; anhedonia; generalized anxiety and other depressive symptoms, which would cause marked degree of functional limitations in activities of daily living, maintaining social functioning and deficiencies of concentration,

_____

[14] In addition to her foregoing Statement, Dr. Payne submitted letters directed "To Whom It May Concern" dated June 9, 2009, September 23, 2009, and November 9, 2009. (Tr. 975-76, 1162-63, 1189.) Plaintiff's instant assignment of error does not address those letters. (Docket Entry 12 at 18-22.)

16

persistence or pace and repeated episodes of deterioration.

(Tr. 16 (internal citation omitted).) The ALJ then evaluated Dr. Payne's opinions in the following manner:

A Medical Source Statement dated June 17, 2009 and letters dated June 9, 2009 and November 9, 2009 from Deborah A. Payne, M.D. indicated that [Plaintiff] was permanently disabled and unable to work. While the issue of determining disability under the . . . Act . . . is an issue reserved to the Commissioner, a treating physician's opinion must be considered. SSR 96-5p. Outpatient records indicated [Plaintiff]'s bipolar disorder and generalized anxiety disorder was [sic] stable with medication and that overall [Plaintiff] was doing well with compliance. It was also noted [Plaintiff]'s substance dependence was in remission. Therefore, the undersigned gives little weight to the opinion that [Plaintiff] is disabled.

(Tr. 21 (internal citation omitted).)

Plaintiff correctly observes that, based on the above-quoted analysis, the ALJ appears to have erroneously construed the entirety of Dr. Payne's opinions as addressing the ultimate issue of disability, a matter reserved to the Commissioner. (Docket Entry 12 at 18-20; see also Tr. 21.) In fact, as described above, Dr. Payne proffered numerous opinions regarding limitations on Plaintiff's ability to perform the mental demands of work that clearly did not constitute issues reserved for the Commissioner. The regulations require the ALJ to discuss the weight he affords such opinions and the reasons for such weighting. See 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2). The ALJ erred by failing to

17

specifically address the opinions in Dr. Payne's Medical Source Statement and to explain the reasoning for the weight assigned.

Moreover, the Court should not find the ALJ's error in this regard harmless. Even if the Court construed the ALJ's observation that Plaintiff was "stable with medication" and "was doing well with compliance" (Tr. 21) as an implicit discounting by the ALJ of the mental functional limitations in Dr. Payne's Medical Source Statement based on other evidence, the ALJ did not adequately explain any such decision. As support for those findings about Plaintiff's stability and compliance, the ALJ cited only to Exhibit 31F, which consists of Dr. Payne's treatment notes from an eight-month period from October 2, 2007, to May 28, 2008 (Tr. 917-27). (See Tr. 21.) However, other treatment notes from Dr. Payne (in the record, but not cited by the ALJ) that post-date the materials cited by the ALJ and which come closer in time to Dr. Payne's Statement of June 17, 2009, conflict with the ALJ's determination.

For example, on December 17, 2008, Dr. Payne noted that Plaintiff had become "non-compliant" with his anti-depressant medication and had experienced depressed mood, a decrease in interests, energy and sleep, as well as increased irritability. (Tr. 994.) Similarly, on March 25, 2009, she observed that Plaintiff had not taken his psychiatric medications in two weeks and she documented hypomanic symptoms and irritability. (Tr. 986.) At that point, Dr. Payne assessed Plaintiff's GAF at 45 (Tr. 992),

representing "serious impairment in social, occupational, or school functioning," American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text revision 2000). Given the ALJ's failure to address these matters, the Court should conclude that an inadequate basis exists for judicial review of the ALJ's decision-making process with regards to Dr. Payne.

Plaintiff also correctly asserts that the ALJ erred by not discussing Dr. Godwin's Medical Source Statement. (Docket Entry 12 at 21-22; Tr. 1055-61.) In his Statement, Dr. Godwin indicated that he served as Plaintiff's "primary care physician" and had seen Plaintiff "nearly monthly [for] 6 months." (Tr. 1055.) Dr. Godwin diagnosed Plaintiff with low back pain, nerve root irritation and bilateral lower extremity pain. (Id.) He opined that Plaintiff could sit for one hour without interruption and for a total of four hours in a work day. (Tr. 1056-57.) Further, Dr. Godwin found that Plaintiff could stand and walk for 30 minutes without interruption and for a total of 3 hours in a workday. (Tr. 1057-58.) However, Dr. Godwin determined that Plaintiff needed to elevate his legs above waist level during the work day and that Plaintiff would need to rest for one hour each work day in addition to normal breaks. (Tr. 1057, 1058.) Dr. Godwin believed that Plaintiff could lift up to five pounds frequently and up to ten pounds occasionally. (Tr. 1059.) Finally, Dr. Godwin predicted that Plaintiff's impairments would cause his absence from work more

than three times per month. (Tr. 1061.) Dr. Godwin's Medical Source Statement constitutes a treating source opinion due explicit weighing by the ALJ. See 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2). Without such discussion by the ALJ, the Court cannot engage in meaningful judicial review of the ALJ's conclusions about Plaintiff's limitations.

Defendant concedes that the ALJ neglected to discuss Dr. Godwin's opinion, but argues that any such error "does not require remand, since rejection of Dr. Godwin's opinion was the only conclusion that would have resulted had that opinion been addressed by the ALJ." (Docket Entry 18 at 12-13 (citing Fernandez v. Apfel, No. 97-CV-4083 (JG), 1998 WL 812591, at *3-4 (E.D.N.Y. Apr. 20, 1998) (unpublished)).) That argument cannot stand.

In the case cited by Defendant, the court noted that the plaintiff did not seek psychiatric treatment until nearly one year after his insured status expired and had not seen the psychiatrist for seven months when he last visited him one week before the hearing to obtain a disability letter. Fernandez, 1998 WL 812591, at *3-4. Further, the Fernandez court found that the claimant did not even have a severe mental impairment and that the psychiatrist "was not a 'treating physician' as defined by the regulations because of the infrequency and superficiality of the doctor-patient relationship, and the opportunistic timing of plaintiff's visits to [the psychiatrist]." Id. at *3. Because the psychiatrist did not

qualify as a treating physician, the court concluded that his opinion did not merit controlling weight. Id. at *4. Moreover, the court observed that "all other objective evidence in the record contradict[ed] the [psychiatrist]'s opinion," such that the ALJ's failure to discuss it did not constitute reversible error. (Id.)

In contrast to Fernandez, no basis exists for this Court to find that Dr. Godwin failed to qualify as a treating physician. Plaintiff visited Dr. Godwin eight times with no significant gaps in treatment and with the last visit about seven weeks before the hearing. (Tr. 1154-58, 1063-64, 1070-71, 1079-89.) Additionally, unlike the claimant in Fernandez, Plaintiff consistently sought treatment of his lower back and leg pain from his onset date to the ALJ's hearing. (See, e.g., Tr. 535, 544-46, 569-73, 577, 752-56, 781-82, 784, 801, 803, 808-11, 825, 842, 846-50, 957, 959-61, 1044-45, 1073-76, 1181-82, 1088-1091, 1093-94.) Further, again unlike in Fernandez, the ALJ properly found that Plaintiff's degenerative disc disease constituted a severe impairment. (Tr. 13.) Finally, in light of the treatment records and diagnostic studies of Plaintiff's back impairment noted above, the Court certainly could not find (as the Fernandez court did) that "all other objective evidence in the record contradicts" Dr. Godwin's opinions. Fernandez thus provides no basis for this Court to treat the ALJ's failure to discuss Dr. Godwin's opinions as harmless.

In sum, the ALJ reversibly erred in analyzing Dr. Payne's opinions and by failing to discuss Dr. Godwin's opinions.

## 3. Hypothetical Questions

Plaintiff next argues that the ALJ's hypothetical questions to the VE did not sufficiently capture all of Plaintiff's limitations. (Docket Entry 12 at 22-24.) Specifically, Plaintiff asserts that a restriction to simple, routine, repetitive tasks ("SRRTs") in a non-production job did not suffice given Plaintiff's concentration deficits. (Id. at 22-23.) Plaintiff additionally claims that his prescription narcotics rendered him "groggy," that he had an "*undisputed* need for a job with 'minimal contact' with other people," and "that his right shoulder was extremely painful and was limited in its range of motion." (Id. at 23-24.)

In light of the recommendation to remand this matter for further evaluation of the opinions of Drs. Payne and Godwin, the Court need not reach the merits of this assignment of error. After properly weighing those opinions, the ALJ must decide whether to adjust Plaintiff's RFC, including the overall exertional level and/or any non-exertional limitations. The ALJ must then re-assess the sufficiency of any hypothetical questions posed to the VE.

**4. Credibility Evaluation**[15]

Finally, Plaintiff claims that the ALJ mishandled credibility issues. (Docket Entry 12 at 24-29.) Specifically, Plaintiff asserts that, because the ALJ concluded Plaintiff's impairment(s) could reasonably cause the degree of pain alleged, his testimony warranted "great weight," but the ALJ instead "rejected [his] pain allegations quite cursorily." (Id. at 24-25 & n.4.) Further, Plaintiff describes as "false" the ALJ's observation that Plaintiff "does not have any functional limitations and there is no evidence of nerve root involvement that impairs his ability to ambulate." (Id. at 25.) He also faults the ALJ for resolving part two of the credibility analysis "solely on the ground that the amount and degree of pain alleged is not supported by the objective evidence." (Id. at 27.) Lastly, Plaintiff argues that the ALJ erred by finding that "[Plaintiff]'s statements concerning the intensity, persistence, and limiting effects of [his] symptoms [we]re not credible to the extent they [we]re inconsistent with the . . . [RFC] assessment." (Id.) In support, he cites Watkins v. Astrue, No. 1:09-cv-01021-SEB-TAB, 2010 WL 3781540, at *5-6 (S.D. Ind. Sept. 20, 2010) (unpublished), and Anderson v. Astrue, No. 09-0971-

---

[15] Because Plaintiff's fourth and fifth assignments of error both involve the ALJ's credibility determination, the discussion which follows analyzes them together. (Docket Entry 12 at 24-29.)

23

TC, 2011 WL 1655552, at *7-8 (D. Or. Mar. 25, 2011) (unpublished)).
(Id. at 28.)  These arguments fail.

The Social Security Administration's Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p, 1996 WL 374186, at *2, as applied by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms.  "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Craig, 76 F.3d at 594 (quoting 20 C.F.R. § 404.1529(b)).

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an evaluation of the intensity and persistence of the claimant's symptoms, as well as the extent to which such symptoms affect his or her ability to work.  Craig, 76 F.3d at 595.  In making this evaluation, the fact finder:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

Here, the ALJ found as to part one of the inquiry that Plaintiff's impairments reasonably could have produced the alleged symptoms. (Tr. 20.) Contrary to Plaintiff's argument, however, Craig does not recognize a "great weight" rule that would give a "claimant a presumption of credibility at step two based upon a successful showing at step one." Smith v. Astrue, 457 F. App'x 326, 329 (4th Cir. 2011); accord Felton-Miller v. Astrue, 459 F. App'x 226, 229 (4th Cir. 2011). The cases cited by Plaintiff in support of the "great weight" rule either come from outside of the Fourth Circuit or, in the case of Nanny v. Matthews, 423 F. Supp. 548, 552 (E.D. Va. 1976), pre-date Craig by nearly two decades. In light of Smith and Felton-Miller, this Court should decline to import a "great weight" rule into the Craig credibility analysis, consistent with the approach taken by other courts in the Circuit. See, e.g., Saylor v. Astrue, No. 5:11CV35, 2013 WL 2252913, at *5 (W.D. Va. May 22, 2013) (unpublished); Lusk v. Astrue, No. 1:11CV196MR, 2013 WL 498797, at *7 (W.D.N.C. Feb. 11, 2013) (unpublished); McClearn v. Astrue, No. 4:11CV3D, 2012 WL 827600, at *4 (E.D.N.C. Jan. 31, 2012) (unpublished), recommendation adopted, 2012 WL 827076 (E.D.N.C. Mar. 9, 2012) (unpublished).

Plaintiff's arguments concerning part two of the Craig credibility analysis similarly fall short. The ALJ's statement that Plaintiff's back pain did not cause "any functional

limitations" (Tr. 20) conflicts with Dr. Godwin's Medical Source Statement, which provides numerous functional restrictions based on Plaintiff's back pain (Tr. 1055-61). However, in light of the many other bases on which the ALJ discounted Plaintiff's credibility, discussed more fully below, any such misstatement by the ALJ constitutes harmless error. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."). Further, Plaintiff's attack on the ALJ's comment that Plaintiff produced "no evidence of nerve root involvement that impairs his ability to ambulate" (Tr. 20) misses the mark. Specifically, Plaintiff focuses solely on the words "no evidence of nerve root involvement" and points out the various places in the record where diagnostic studies showed nerve root involvement, but ignores the modifying phrase "that impairs his ability ambulate." (See Docket Entry 12 at 25.) As discussed in a prior subsection, the record does not contain evidence that Plaintiff's back impairment compromised his ability to ambulate.

Plaintiff also mistakenly asserts that the ALJ relied solely on the lack of objective evidence of pain to discount Plaintiff's credibility. (Id. at 27.) In fact, the ALJ noted that "treatment records revealed good recoveries status post surgeries," that

Plaintiff "ambulate[d] normally and required no long term assistive devices" and that "treatment records revealed [Plaintiff] received sporadic emergency room visits for medical injuries with subsequent medical treatment, but no ongoing medical treatment, which was disabling for long periods of time." (Tr. 20.) The ALJ further observed that Plaintiff continued to ride his motorcycle despite complaints of low back pain . . .." (Id.) Additionally, the ALJ emphasized that the "medical records reveal a pattern [of] self medication with alcohol, repeated use of cocaine and drug seeking behavior after the alleged onset date." (Tr. 21.) Finally, the ALJ pointed out that, in March 2009, an orthopedist noted that Plaintiff "was performing full activities" and "had virtually no limitation" and that, in a function report, Plaintiff's mother reported that Plaintiff cared for himself, prepared his own food, watched television every day, read and joked with others on the telephone. (Tr. 21-22 (citing 222-28, 1001).) The ALJ's part two credibility analysis thus extended well beyond a mere lack of objective evidence and properly relied upon the factors contained in the relevant regulations, 20 C.F.R. §§ 404.1529(c) and 416.929(c), and endorsed by Craig, 76 F.3d at 595.

As a final matter, the Court should reject Plaintiff's reliance on Watkins, 2010 WL 3781540, at *5-6, and Anderson, 2011 WL 1655552, at *7-8, to the extent he seeks to establish that an ALJ per se errs by describing a claimant's symptoms as "not

credible to the extent they are inconsistent with the RFC assessment." In Watkins, the ALJ failed to evaluate the claimant's credibility at all, limiting her analysis to a conclusion that the claimant's "testimony was not supported by the medical record." Watkins, 2010 3781540, at *5. Under those circumstances, the court could not "ascertain on what basis [the claimant]'s statements were inconsistent with the ALJ's conclusion that [the claimant] could perform the full range of sedentary work." Id. In Anderson, the court noted that "[n]o authority suggests that an ALJ may reason that a claimant is not credible based on the claimant's RFC." Anderson, 2011 WL 1655552, at *7-8.

Here, the ALJ clearly did not discount Plaintiff's credibility simply because the ALJ found that Plaintiff retained the RFC to perform a limited range of sedentary work. Rather, the ALJ clearly found Plaintiff's subjective complaints not fully credible based upon the objective medical evidence and Plaintiff's treatment history, response to treatment, and daily activities. The ALJ then made an assessment of Plaintiff's RFC consistent with only that part of Plaintiff's subjective complaints the ALJ deemed credible. As of the date of this Recommendation, no court has applied Watkins or Anderson to require remand whenever an ALJ uses the language seized upon by Plaintiff. The Court also should decline to do so and, instead, should uphold the ALJ's credibility analysis.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be reversed, and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings addressing the opinions of Plaintiff's treating physicians Dr. Deborah Payne and Dr. Patrick Godwin under 20 C.F.R. §§ 404.1527 and 416.927(d) and revisiting steps four and five of the SEP in light of any new limitations found based on a proper assessment of those opinions. As a result, the Court should deny Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) and should grant in part and should deny in part Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11), in that the Court should order a remand as described, but not an immediate award of benefits.

___/s/ L. Patrick Auld___
**L. Patrick Auld**
**United States Magistrate Judge**

February 3, 2014